Carroll G. ROBINSON, Bruce
R. Hotze, and Jeffrey N.
Daily, Petitioners,

v.

Annise D. PARKER, Mayor; City of
Houston; Houston City Council,
et al., Respondents.

No. 08–0658.

Supreme Court of Texas.

Argued Nov. 18, 2009.

Decided Aug. 26, 2011.

Rehearing Denied Oct. 21, 2011.

William A. 'Andy' Taylor, Amanda Eileen Staine Peterson, Andy Taylor & Associates, P.C., Houston, TX, for Carroll G. Robinson.

Scott J. Atlas, Bill White for Texas, Patrick W. Mizell, Stacey Neumann Vu, Vinson & Elkins LLP, Stephen Douglas Pritchett Jr., David M. Gunn, Beck Redden & Secrest, L.L.P. Arturo G. Michel, City Attorney, City of Houston Legal Dept., Patrick Zummo, Law Offices of Patrick Zummo, John Berchmans Daily, Weil Gotshal & Manges LLP, Houston, TX, Me-

lanie Plowman Sarwal, Weil Gothshal & Manges LLP, Austin, TX, for Bill White.

Jonathan Day, Andrews Kurth LLP, Warren W. Harris, Bracewell & Giuliani, LLP, Houston, TX, for Amicus Curiae Continental Airlines, Inc.

David A. Furlow, Thompson & Knight, L.L.P., Levi James Benton, Benton Massey PLLC, Houston, TX, for Amicus Curiae Francis M. Kubosh.

Justice GREEN delivered the opinion of the Court.

In this case, we are asked to decide (1) whether citizens who signed a petition proposing a local ballot initiative have standing to assert their declaratory judgment claims that the voter-approved initiative is valid and must be enforced; and (2) the validity of the voter-approved initiative. Because the citizens' claims are not ripe, however, we cannot reach those issues.

## I

Petitioners Carroll G. Robinson, Bruce R. Hotze, and Jeffrey N. Daily are citizens of Houston who participated to varying degrees in efforts to place a proposition regarding city revenues and spending on the ballot for public referendum. Hotze and Daily organized the petition drive and helped draft the final language of the proposal. All three Petitioners signed the petition, donated time and money to campaigns promoting the passage of the proposition, and voted in favor of it.

On November 2, 2004, Houston voters passed the proposition, called Proposition 2, as well as Proposition 1, which the Houston City Council had placed on the ballot by its own act in response to Prop. 2.[1] Prop. 1 garnered more votes, with 280,-596 favorable votes, or 64% of the total, as opposed to 242,697 favorable votes for Prop. 2, or 56% of the total. However, the City of Houston determined that, because Prop. 1 and Prop. 2 conflict, Prop. 2 was ineffective and unenforceable. The City based that determination both on what Petitioners refer to as Prop. 1's "poison pill provision,"[2] and on the conflicting-ordinance provision in the Houston City Charter. See Hous., Tex., Code Ordinances, City Charter art. IX, § 19 (2006) ("[A]t any election for the adoption of amendments if the provisions of two or more proposed amendments approved at said election are inconsistent the amendment receiving the highest number of votes shall prevail."). The mayor there-

1. Prop. 2 was described on the ballot as:

    The City Charter of the City of Houston shall be amended to require voter approval before the City may increase total revenues from all sources by more than the combined rates of inflation and population, without requiring any limit of any specific revenue source, including water and sewer revenues, property taxes, sales taxes, fees paid by utilities and developers, user fees, or any other sources of revenues.

    Prop. 1 was described on the ballot as:

    The Charter of the City of Houston shall be amended to require voter approval before property tax revenues may be increased in any future fiscal year above a limit measured by the lesser of 4.5% or the cumulative combined rates of inflation and population growth. Water and sewer rates

would not increase more than the cumulative combined rates of inflation and population growth without prior voter approval. The Charter Amendment also requires minimum annual increases of 10% in the senior and disabled homestead property tax exemptions through the 2008 tax year.

2. Prop. 1 provides:

    If another proposition for a Charter amendment relating to limitations on increases in City revenues is approved at the same election at which this proposition is also approved, and if this proposition receives the higher number of favorable votes, then this proposition shall prevail and the other shall not become effective.

fore did not certify the results of the passage of Prop. 2 to the secretary of state, and the city council did not enter an order in the city records declaring that Prop. 2 had been adopted. *See* Tex. Loc. Gov't Code §§ 9.005(b) (requiring city council to pass an ordinance declaring the adoption of an initiative that receives a majority of the vote), 9.007 (requiring mayor to certify results of an election that passes a charter amendment to the secretary of state).

Petitioners sought relief from the court of appeals, which granted their petition for writ of mandamus, holding that the City had failed to perform the ministerial duties of certifying the results to the secretary of state and entering an order declaring the charter amendments to have been adopted. *In re Robinson,* 175 S.W.3d 824, 826–32 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). On the same day that they petitioned for mandamus relief, Petitioners filed the underlying suit seeking a declaratory judgment that Prop. 2 is effective and must be enforced. While that case was pending, the city council passed an ordinance recognizing that both Prop. 1 and Prop. 2 had passed but also declaring that Prop. 1 had received the higher number of votes. As a result, both propositions became part of the Houston City Charter. *See* Hous., Tex., Code Ordinances, City Charter art. III, § 1; art. VI-a, § 7; art. IX, § 20 (2006). The trial court ultimately granted summary judgment in favor of Petitioners. The court of appeals, however, ruled that Petitioners lacked standing to assert their claims, relying on our holding in *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001). 260 S.W.3d 463, 470–72 (Tex. App.-Houston [14th Dist.] 2008, pet. filed). The court remanded the case to the trial court to allow Petitioners to amend their

pleadings and establish standing. *Id.* at 466.

Robinson, Hotze, and Daily petition for review on two grounds.[3] First, they assert that the court of appeals erred when it determined that Petitioners lack standing. Second, they ask us to consider the merits of their claim that Prop. 2 should be enforced.

## II

■ Ripeness "is a threshold issue that implicates subject matter jurisdiction ... [and] emphasizes the need for a concrete injury for a justiciable claim to be presented." *Patterson v. Planned Parenthood of Hous. & Se. Tex.,* 971 S.W.2d 439, 442 (Tex.1998). In evaluating ripeness, we consider "whether, *at the time a lawsuit is filed,* the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851–52 (Tex.2000) (emphasis in original) (quoting *Patterson,* 971 S.W.2d at 442). Although a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed. *See Perry v. Del Rio,* 66 S.W.3d 239, 251 (Tex.2001).

■ The record is silent as to whether the City has, in fact, failed to comply with the Prop. 2 spending caps. As the parties acknowledged at oral argument, the record in this case indicates that then-mayor Bill White, in response to Prop. 2's inclusion in the City Charter, stated his intention to comply with the caps Prop. 2 imposed. In an attempt to show noncompliance, Petitioners presented several documents with their post-submission brief. Petitioners point to a May 2009 letter from then-

---

**3.** The current Houston mayor has been substituted for her predecessor. *See* Tex.R.App. P.

7.2(a) (automatic substitution when public officer is party in official capacity).

controller Annise Parker, who is now mayor of Houston, stating that the controller's office is "no longer responsible for analyzing the budget for compliance with Proposition 2." However, nothing in that letter or elsewhere in the record indicates that the City has actually failed or will soon fail to comply with Prop. 2's spending caps. Petitioners also point to a series of letters they sent to the City's accounting firm. In the letters, they demanded documentation of the City's compliance with Prop. 2, as well as correction of alleged errors in the City's calculation of its compliance with Prop. 2's allowable spending caps. In a transmittal letter to this Court, Petitioners stated that "proper calculations by an independent outside auditor would show that the City is not in compliance [with] the spending controls" set forth in Prop. 2. But a case is not ripe when the determination of whether a plaintiff has a concrete injury can be made only "on contingent or hypothetical facts, or upon events that have not yet come to pass." *Gibson*, 22 S.W.3d at 852. From such inconclusive documentation and mere allegations and speculation, we cannot ascertain with necessary certainty that the City has failed to comply with Prop. 2's spending caps or that it is likely to exceed the spending caps in the near future. *See Perry*, 66 S.W.3d at 249 (stating that a case based on "uncertain or contingent future events" is not ripe for judicial determination); *Patterson*, 971 S.W.2d at 444 (explaining that a potential injury cannot be ripe unless it is established with certain and definite documentation).

Because there is no showing that Petitioners have suffered a concrete injury, we hold that Robinson, Hotze, and Daily have failed to present a sufficiently ripe, justiciable claim. We express no opinion on whether, even if the case were ripe, Robinson, Hotze, and Daily would have standing to assert their declaratory judgment claims, as "[t]he essence of the ripeness doctrine is to avoid premature adjudication ... [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Patterson*, 971 S.W.2d at 444.

### III

Because Petitioners' claims are not ripe for adjudication, the trial court did not have jurisdiction to hear this dispute. *See Gibson*, 22 S.W.3d at 852. Accordingly, we vacate the judgments of the court of appeals and trial court and dismiss the case for want of jurisdiction.

Justice GUZMAN did not participate in the decision.