

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-26-00103-CV

IN RE JESUS YBARRA, RELATOR

ORIGINAL PROCEEDING

March 25, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Relator, Jesus Ybarra, seeks mandamus relief from the trial court's order requiring him to submit to genetic testing to determine the parentage of Real Party in Interest, LaTorya Nichole Black Schuetz.  Relator also asks this Court to shield him from a potential contempt finding for failing to comply with that order, arguing that double jeopardy precludes his prosecution.  We deny Relator's requested relief.

BACKGROUND

Schuetz was born to Jeweline Marie Black in November 1986 in McCamey, Texas.  No father was listed on her birth certificate, and she had no presumed, acknowledged, or adjudicated father.  According to an unsworn statement, her mother "has been unable

to/unwilling to identify who [her] father was growing up." She said Relator's brother, Manuel, is her "uncle." DNA testing has ruled out Manuel and a brother, Lee, as being the father. She reasons that the only remaining possibilities would be one of Manuel's other brothers: Relator and Julian. The record reflects that Relator and Schuetz's mother resided in McCamey, Texas, during the window of Schuetz's conception and birth. Relator was eighteen or nineteen years old at that time. He testified under oath that he never met Schuetz's mother and denies any sexual relationship with her.[1]

In February 2023, when she was age thirty-six, Schuetz filed suit to determine parentage. She testified that establishing her biological parentage is a matter of medical necessity for both herself and one of her sons. She alleges she and her son have medical conditions that are genetically inherited, and testified her health insurance providers require a specific, narrowed family medical history to grant preauthorization for certain advanced medications and tests. She testified that she is not seeking child support, inheritance, or access to Relator's medical records.

Relator appeared in the suit in June 2023. Relator challenged Schuetz's standing and the constitutionality of Texas Family Code § 160.606, the statute permitting Schuetz to seek a parentage determination "at any time, including after the date [Schuetz] becomes an adult." Relator initially argued the genetic testing provisions "are

---

[1] Relator's brother, Julian, is deceased. Jeweline is alive but has suffered a stroke; Schuetz says recall and emotional subjects are difficult for her mother. Schuetz's trial brief alleges that testing Relator "would be the simplest way to rule out which brother is a potential paternal match for Schuetz." She reasons that if Relator is excluded as her father through genetic testing, she would know that Julian is her biological father.

We express no opinion on whether the evidence is sufficient to support an order for genetic testing. Those questions are not raised in Relator's mandamus petition and are therefore not before us.

unconstitutional as invasion of the right of privacy and a violation of Respondent's right to due process."

On February 28, 2025, the trial court issued a letter ruling directing both parties to submit to genetic testing no later than March 7, 2025. The day before testing was to take place, Relator filed a motion to stay the court's ruling requesting that enforcement be stayed for 180 days so that he could pursue relief by mandamus. He did not appear for testing before the March 7 deadline. On April 22, 2025, the trial court signed a written order memorializing its letter ruling.

In September 2025, Schuetz filed her "First Amended Motion to Compel Genetic Testing and for Sanctions." She alleged that Relator neither appeared for testing as ordered nor sought mandamus relief as promised. In February 2026, the trial court signed an order granting Schuetz's motion and again ordered Relator to undergo genetic testing, this time before February 24, 2026. The court further ordered that the failure to submit to testing as ordered could result in a finding of contempt, with sanctions to include jail time and/or imposition of fines.

Relator filed the present original proceeding on February 23, 2026. He argues the trial court erred in ordering him to participate in genetic testing for a paternity determination "in a manner which a) improperly applies Chapter 160 retroactively, b) invades [his] right of privacy, and/or c) violates [his] right to due process." He also argues that the trial court is barred under double jeopardy principles from holding him in contempt of court in the future for failing to submit to genetic testing.

3

**ANALYSIS**

Mandamus relief is appropriate to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019). A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure to do so constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Unreasonable Delay in Seeking Mandamus Relief Regarding Retroactivity

We begin with Relator's constitutional challenges to the trial court's order compelling genetic testing. Relator contends the order (a) improperly applies Chapter 160 retroactively, (b) invades his right to privacy, and (c) violates his right to due process. We need not reach the merits of any of these arguments because Relator's delay in seeking mandamus relief precludes review.

The Texas Rules of Appellate Procedure impose no fixed deadline for filing a mandamus petition. But issuance of the writ is largely controlled by equitable principles, and equity "aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d at 367 (Tex. 1993) (orig. proceeding). Appellate courts have thus denied relief when a relator delays four months or more without explanation. *Id.* (denying mandamus relief for lack of diligence after relator's unexplained four-month period of delay); *Int'l Awards, Inc. v. Medina*, 900 S.W.2d 934, 935–36 (Tex. App.— Amarillo 1995, orig. proceeding) (same). *See also In re Carr Eng'g Inc.*, No. 05-24-01151-CV, 2024 Tex. App. LEXIS 7106, at *1 (Tex. App.—Dallas Oct. 2, 2024, no pet.) (mem.

4

op.) (denying relief where relator waited nearly four months, filing on the eve of a contempt hearing against him).

The record here reflects a delay far exceeding four months, and one that Relator has not adequately justified. The trial court held a full evidentiary hearing on Schuetz's petition for genetic testing on February 20, 2025. Eight days later, the trial court issued a letter ruling ordering genetic testing to take place before March 7, 2025. On March 6, 2025, the day before the court-ordered testing deadline, Relator's counsel indicated that Relator intended to file a petition for mandamus. Schuetz appeared for testing on March 7, 2025, and complied fully. Relator did not.

On April 22, 2025, the court reduced its letter ruling to an order, compelling Relator to submit to testing. Around that time, Relator received the reporter's record of the February hearing. At Relator's request, the trial court also made detailed Findings of Fact and Conclusions of Law on June 2, 2025.

Relator attempts to justify his delay by arguing that both elements of mandamus, abuse of discretion and lack of adequate remedy by appeal, were not satisfied until the contempt threat materialized. But his constitutional arguments have not changed since 2025. The retroactivity, privacy, and due process challenges he raises now are the same challenges he could have raised then. The contempt threat did not create new claims; it merely added a consequence for continued noncompliance.

We decline to reward such delay. Relator slumbered on his rights for nearly a year while Real Party in Interest incurred the expense of multiple enforcement proceedings. *See Rivercenter*, 858 S.W.2d at 367. Relator's request for mandamus relief from the trial

court's order compelling genetic testing, including his challenges based on retroactivity, privacy, and due process, is barred by his unreasonable and unjustified delay.

Double-Jeopardy Complaint[2]

Relator also seeks an order prohibiting the trial court from holding him in contempt, arguing that double jeopardy bars any such proceeding. His theory rests on the February 17, 2026, hearing, where the trial court did not find Relator in contempt. Instead, the court issued a new order from the bench, directing Relator to submit to genetic testing by February 24, 2026.

Relator's theory is that because of the February 17 hearing, he "has already been tried for refusal to comply with the order for genetic testing under Texas Family Code § 160.622, and double jeopardy precludes him being faced with those accusations again." We decline to grant mandamus relief.

Relator's request is not ripe. *See Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (evaluating ripeness as "whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote.") (cleaned up). Relator does not currently face a new contempt proceeding. The court warned that future noncompliance "could result in contempt of

---

[2] Double jeopardy applies only to criminal contempt, not civil. *See Ex parte Hudson*, 917 S.W.2d 24, 26 (Tex. 1996). "[T]he distinction between criminal and civil contempt does not turn on whether the underlying litigation is civil or criminal, but rather on the nature of the court's punishment." *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011). In civil contempt, the contemnor "carries the keys to the jail cell in his or her pocket since the confinement is conditioned on obedience with the court's order," while criminal contempt punishes the contemnor for some completed act that affronted the dignity and authority of the court. *Id.* Given our disposition of Appellant's issue, we take no position on the merits of Relator's argument.

Court findings of up to 10 days in jail and up to a $500 fine for each day that he doesn't comply with my order," adding, "I don't want to see us back here in court for a contempt hearing." We decline to prohibit a proceeding that has not yet occurred based on a defense that has not yet been raised, litigated, or rejected. To do so would be to issue an advisory opinion. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). For this reason, we reject Relator's request for relief on double jeopardy grounds.

Lawrence M. Doss<br>Justice